```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

MERYLAN RANSON, ET AL           §
                                §
VS.                             §   CIVIL ACTION NO.4:07-CV-240-Y
                                §
NEWSTART, INC., ET AL           §
```

                   ORDER GRANTING PLAINTIFFS'
                MOTION FOR PARTIAL SUMMARY JUDGMENT
           AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this case, Plaintiffs have mounted a challenge under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), to their employers' practice of not compensating them for eight hours of "sleep time" when they were required to sleep on Defendants' premises. Plaintiffs are suing Defendants for uncompensated work and for unpaid overtime wages. The parties have filed cross motions (docs. ##25 & 28) for summary judgment on the issue of whether Defendants were required to compensate Plaintiffs for hours Plaintiffs were required to remain on Defendants' premises, but were permitted to sleep during that time. After review, the Court concludes that Plaintiffs were entitled to be compensated.

I.   Factual Background[1]

Defendants operate five residential group homes for mentally handicapped adults situated in various locations throughout Tarrant County, Texas. Plaintiffs are "Resident Instructors" (also known

---

[1] The following facts are either uncontroverted or, if disputed, are construed in a light most favorable to Defendants.

as "Direct-Care Staff") who work in the group homes and assist and care for the mentally handicapped residents.

Plaintiffs work a rather unorthodox schedule that requires them to stay overnight at the group home five days a week. According to Defendants, Plaintiffs' work week begins on Sunday at 6:00 p.m. and concludes on Friday at 8:00 a.m. Plaintiffs normally receive compensation for thirty-eight hours per week.

Plaintiffs' first shift begins on Sunday from 6:00 p.m. until 10:00 p.m. Their second shift begins on Monday from 6:00 a.m. until 8:00 a.m., for a total of six hours on duty the first day. The hours between 10:00 p.m. and 6:00 a.m. are considered "sleep time." Plaintiffs are not considered to be on duty, and they do not have any assigned duties, but they are required to reside at the group home remain on call in case any of the residents are in need of special assistance during the night. Defendants are required to have the group homes staffed twenty-four hours to assist and care for the residents when needed.

Plaintiffs are off duty from Monday at 6:00 a.m. until 4:00 p.m. During that time, Plaintiffs do not reside at the group home and are completely free to do as they wish with their time. All of the plaintiffs have their own private residences and they are not permitted on the group-home premises during their time off.

For Plaintiffs' second through fifth workdays, they have on-duty shifts from 4:00 p.m. until 10:00 p.m. and again from 6:00

a.m. until 8:00 a.m., for a total of eight hours of duty each of those four days. The hours of 10:00 p.m. and 6:00 a.m. are considered sleep time where Plaintiffs are required to remain on Defendants' premises in case a resident needs assistance.

Defendants do not compensate Plaintiffs for sleep time--the point of contention in this suit. The exception is that Defendants fully compensate Plaintiffs for any hours during which their sleep time is interrupted to address resident needs. Moreover, if the interruptions prevent Plaintiffs from getting at least five hours' sleep on a given night, they are paid for the entire eight-hour sleep period. Plaintiffs are supposed to record the times that their sleep time is interrupted on a time sheet and in a log book.

While Plaintiffs do not have any formal duties during their sleep time, they are required to remain on Defendants' premises the entire time. Further, Plaintiffs are not allowed to have any visitors during this time. This includes family members and friends. Plaintiffs are not permitted to make phone calls over fifteen minutes in length and they are prohibited from making any long-distance calls. And Plaintiffs are prohibited from watching any rated "R" movies.

There is no written agreement between Plaintiffs and Defendants regarding Defendants' sleep-time policy. However, Plaintiffs were informed of this policy when they interviewed for the Resident-Instructor position and again when they were hired.

3

Plaintiffs agreed to the sleep-time policy as a condition of their employment.

II. Summary-Judgment Standard

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.*; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).

Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

To prevail on a motion for summary judgment, a moving party may submit evidence that negates a material element of the respondent's claim or defense or show that there is no evidence to support an essential element of the respondent's claim or defense. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-24 (1986). To negate a material element of the respondent's claim or defense, a moving party must negate an element that would affect the outcome of the action. *See Anderson*, 477 U.S. at 247. If the moving party alleges that there is no evidence to support an essential element of the respondent's claim or defense, the moving party need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the moving party need only show that the respondent, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex*,

5

477 U.S. at 325; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and produce evidence that sets forth specific facts showing there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324; *see also* FED. R. CIV. P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50.

III. Analysis

Regulations and opinions promulgated by the Department of Labor ("DOL") pursuant to the FLSA provide that, absent certain exceptions, sleep time constitutes hours worked. *See* 29 C.F.R. §§ 785.21-23; DOL Wage and Hour Memorandum 88.48, 1988 DOL WH LEXIS 15 (June 30, 1988) ("DOL Memorandum"). While DOL's regulations and opinions are not controlling, they "do constitute a body of experience and informed judgment to which courts and litigators may properly resort for guidance. The weight of such a judgment . . . will depend upon the thoroughness evident in its consideration, the

validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The parties' dispute here centers on whether section 785.21 or section 785.23 applies to their situation. They do not dispute the validity of any of the regulations or opinion statements and, indeed, most courts have given them substantial, if not controlling, deference. *See Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp. 2d 426, 429-30 (W.D. Pa. 2000)(citing cases); *but see Beaston v. Scotland School for Veterans' Children*, 693 F. Supp. 234, 238 (M.D. Pa. 1988)(refusing to defer to section 785.21, concluding that it is arbitrary and in violation of *Skidmore*). This Court will defer to these regulations and opinions in resolving the dispute in this case.

Defendants argue that per section 785.23 and the DOL Memorandum, which was specifically directed at group homes for the mentally handicapped, they are not required to compensate Plaintiffs for sleep time. Section 785.23 addresses employees who reside on an employer's premises permanently or for extended periods of time. In relevant part, it provides that an employee who resides, either permanently or for extended periods of time, on an employer's premises is not considered to be working the entire time he is on the premises. "Ordinarily, he may engage in normal

private pursuits and thus have enough time for eating, sleeping, entertaining, **and other periods of complete freedom from all duties when he may leave the premises for purposes of his own**." 29 C.F.R. § 785.23 (emphasis added). Because such working arrangements may make it difficult to determine the exact hours worked, the employee and employer may enter into "any reasonable agreement" that takes into consideration periods of time for sleep, eating, entertaining, and other periods where the employee enjoys complete freedom from all of his duties and may leave the premises to do as he wishes.

On its face, the regulation contemplates that an employee who either permanently resides on an employer's premises or resides there for an extended period of time is not performing duties the entire time he is on the employer's premises; thus, the employer should not be required to pay the employee the entire time he resides on the premises simply because the employee is residing on the employer's premises. But this regulation also contemplates that these periods of sleeping, eating, entertaining, etc., are periods of time that the employee enjoys "complete freedom from all duties" where the employee "may leave the premises." *Id.* As a result, it does not appear that section 785.23 applies to the situation here. During their periods of sleep time, Plaintiffs are not completely free from all duties. They are essentially "on call" and have a duty to remain on the premises ready to address any pressing needs of the residents that may arise during the

8

night.  Plaintiffs are not permitted to leave for any reason without Defendants' express permission, they are not permitted to have any guests, they must receive approval before they can have any individual stop by to drop anything off, they are not allowed to talk on the phone for more than fifteen minutes, they are not allowed to make any long-distance calls, and they are not permitted to watch any rated "R" movies.  Hence, Plaintiffs do not enjoy "complete freedom."  29 C.F.R. § 785.23.

In the DOL Memorandum, however, the DOL refined and restated the minimum conditions required to meet section 785.23.  The DOL Memorandum specifically addressed residential-care and group-home facilities and recognized that the "duties of most employees of such residential-care facilities require them to remain on their employer's premises overnight" and, "although permitted to sleep, group-home employees are required to remain on the premises to be available to clients in case of emergencies or personal crisis."

The DOL Memorandum provides that an employee of a group-home facility will be found to reside on the premises of an employer for extended periods of time and, thus, be permitted to enter into reasonable agreements regarding the exclusion of sleep time from compensation if "(1) the employee is on duty at the group home and is compensated **for at least eight hours in each of five consecutive 24-hour periods**; and (2) the employee sleeps on the premises for all sleep periods between the beginning and end of this 120-hour

9

period." (Emphasis added.) Further, to qualify for the sleep-time deduction, the employee must be provided with private quarters[2] in a homelike environment[3], a reasonable agreement regarding the compensation of sleep time must be reached in advance and cannot be the result of a unilateral decision of the employer, and no more than eight hours of uninterrupted sleep time per night may be excluded. Periods "of off-duty time during the day when the employee is completely relieved of all responsibilities" may also be excluded from compensation. Thus, the DOL Memorandum contemplates that up to eight hours of sleep time may be deducted from compensation under section 785.23 even though the employee of a group home may be required to remain on the group home's premises during that time so long as the conditions in the Memorandum are met.

Unfortunately for Defendants, as reflected in their own evidence, they do not meet the exception outlined in the DOL

---

[2] The DOL Memorandum defines "private quarters" as

> living quarters that are furnished; are separate from the 'clients' and from any other staff members; have as a minimum the same furnishings available to clients (e.g. bed, table chair, lamp, dresser, closet, etc.) and in which the employee is able to leave his or her belongings during and on- and off-duty periods.

[3] "Homelike environment" is defined by the DOL memorandum as

> facilities including 'private quarters' . . . and also including on the same premises facilities for cooking and eating; for bathing in private; and for recreation (such as TV). The amenities and quarters must be suitable for long-term residence by individuals and must be similar to those found in a typical private residence or apartment, rather than those found in institutional facilities such as dormitories, barracks, and short-term facilities for travelers.

10

Memorandum. It clearly requires that the employee be compensated for at least eight hours in each of the five consecutive twenty-four-hour periods. Defendants' evidence reveals that Plaintiffs are only compensated for eight hours in four consecutive twenty-four-hour periods. In the first twenty-four-hour period, Plaintiffs are only compensated for six hours. Both Defendants and Plaintiffs have submitted the time sheets for Plaintiffs, and those sheets consistently show that (even after discounting tardiness, absence, or interruptions in the sleep time) Plaintiffs received less than forty-hours compensation per week and less than eight hours compensation during the first twenty-four-hour period.

Further, while the DOL Memorandum contemplates group-home employees being required to remain on the premises during the sleep time, it does not contemplate any further restrictions on their freedom. The Memorandum contemplates the necessity of restricting the employees to the premises so they are immediately available to attend to any exceptional, emergency, or personal needs of a resident. In essence, the group-home employee is on-call and engaged by the employer to wait and see if any resident is in any need of assistance.

The Supreme Court has recognized that "an employer, if he chooses, may hire a man . . . to do nothing but wait for something to happen." *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944); *see also Skidmore,* 323 U.S. at 136 (holding "no principle in law found

11

either in the statute or in court decisions precludes waiting time from also being working time"). But implied in the Memorandum is the understanding that the only restriction on the group-home employee during the sleep-time period is the employee's lack of freedom to leave the premises. *See also Skidmore,* 323 U.S. at 139 (addressing employees who were not free to leave the employer's premises: "the rest of the time is different because there is nothing in the record to suggest that, even though pleasurably spent, it was spent in the ways the men would have chosen had they been free to do so").

The Memorandum requires the group-home employer, to qualify for the sleep-time deduction, to provide the employee with a private residence in a homelike environment. This contemplates an employee being able to engage in activities a completely free individual could engage in while in the comfort of his own home. That includes, as section 785.23 states, entertaining. The undisputed evidence shows that they are significantly restricted in their ability to entertain.

Finally, the case law Defendants cite in support of their argument is distinguishable. In *Shannon v. Pleasant Valley Community Living Arrangement, Inc.,* 82 F. Supp. 2d 426, 431 (W.D. Pa. 2000), the "undisputed facts" showed that the DOL Memorandum's two-part test was satisfied. There is no indication that the group-home employees had any additional restrictions beyond being

12

required to sleep on the employer's premises so that they were available to attend to any of the residents' needs during the night. *Id.* In *Ormsby v. C.O.F. Training Services, Inc.,* 194 F. Supp. 2d 1177, 1179 (D. Ks. 2002), the plaintiff group-home employee "received compensation for a standard forty-hour work week." Other than being required to sleep overnight at the group home, it was "uncontroverted" that the group-home employee was completely free to spend his time as he wished. *Id.* In *Nelson v. Alabama Institute for Deaf and Blind,* 896 F. Supp. 1108, 1112 (N.D. Al. 1995), however, a case not cited by Defendants, houseparents in the Alabama Institute were entitled to compensation for their overnight stays because they were not compensated for at least eight hours in each of five consecutive twenty-four-hour periods as required by the DOL Memorandum.

Because Defendants do not compensate Plaintiffs for eight hours in each of five consecutive twenty-four-hour periods and place further restrictions on Plaintiffs' sleep time that go beyond just restricting them to the premises, the Court concludes that Defendants do not qualify for the sleep-time deduction under section 785.23 as refined by the DOL Memorandum.

This brings the Court to Plaintiffs' argument that they are entitled to compensation for their sleep time under sections 785.17 and 785.21. Under DOL regulations, Plaintiffs' sleep-time period is a part of their workday because under the continuous workday

13

rule, "workday" means "the period between the commencement and completion on the same workday of an employee's principle activity or activities." 29 C.F.R. § 790.6(b); *see also IBP, Inc. v. Alvarez,* 546 U.S. 21, 29 (2005). While section 790.6 does not mandate that all periods of an employee's workday need be compensated,[4] Section 785.17 provides that an employee "who is required to remain on call **on the employer's premises** . . . is working while 'on call'" and, thus, is entitled to compensation. 29 C.F.R. § 785.17 (Emphasis added.)

Section 785.21 applies to employees who are required to be on a tour of duty for less than twenty-four hours but may experience periods of free time during their duty. It provides that an employee in such a situation "is working even though he is permitted to sleep or engage in other personal activities when not busy." 29 C.F.R. § 785.21. It further provides the example of a "telephone operator . . . who is required to be on duty for specified hours" for purposes of taking phone calls, and states that she "is working even though she is permitted to sleep when not busy answering calls . . . . **Her time is given to her employer**. She is required to be on duty and the time is worktime." *Id.* (emphasis added).

---

[4] Under DOL regulations, "bona fide meal periods are not worktime." 29 C.F.R. § 785.19. To qualify as a bona fide meal time, "the employee must be completely relieved from duty for the purposes of eating regular meals." *Id.*

14

The regulations above are in accord with Supreme Court precedent. As mentioned above, the Supreme Court has recognized that an employer can hire an employee to do nothing but wait for something to happen. *Armour & Co.*, 323 U.S. at 133. "Readiness to serve may be hired," and the question to be decided is whether the sleep-time period is time spent "predominantly for the employer's benefit or for the employee's . . . ." *Id.; see also Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671, 673 (5th Cir. 1991)(distinguishing *Armour* "in that Bright did not have to remain on or about his employer's place of business" while on call but merely was required not to be intoxicated such that he could not work on medical equipment if called, had to be reachable by a beeper, and must be able to arrive within twenty minutes of being contacted).

Here, the record undisputably shows that Plaintiffs' sleep time was predominantly for the employer's benefit. Defendants needed the group home staffed twenty-four hours per day with employees ready to assist the residents with any emergencies or special needs that may occur throughout the night. The evidence shows that Plaintiffs were on-call during their sleep time and engaged by Defendants to be present and available should any resident require any assistance.

The FLSA, precedent, and DOL regulations and opinions give rise to the general rule that sleep time must be compensated. *See*

*Nelson,* 896 F. Supp. at 1111 ("Generally, under FLSA's accompanying 'sleep-time' regulations, employees must be compensated for sleep time unless the employment arrangement fits within one of . . . two narrow exceptions . . . ."). Defendants do not qualify for the narrow exceptions to the general rule, and Plaintiffs were entitled to be compensated during their sleep time.

Defendants argue that they should not have to compensate Plaintiffs for their sleep time because Plaintiffs agreed to that arrangement when they were hired. Defendants asseverate that Plaintiffs were informed in their interview that they would not be compensated for their sleep time and that they were informed of that again when hired. Defendants further posit that Plaintiffs were informed that Defendants had a formal grievance process and that none of the plaintiffs ever formally grieved their compensation arrangement.[5] Instead, Defendants argue, Plaintiffs accepted employment under the terms offered and continually worked and accepted their paychecks. Thus, Defendants contend, there is an implied contract between the parties that sleep time would not be compensated and Plaintiffs should be held to that bargain.

Absent the FLSA and DOL regulations, the Court would be inclined to agree with Defendants. There should be no reason why

---

[5] It is questionable at best as to whether Defendants truly had a formal grievance process. Defendants point the Court to a document that simply states the following: "Welcome new employee! . . . Please ask your supervisor if you have any questions about our organization, your job responsibilities, or company operations. Additionally, our doors are always open to you." (Defs.' App. at 36.) That hardly describes a formal process for grieving.

16

employees and employers cannot negotiate an employment arrangement that provides for periods of uninterrupted sleep time to be uncompensated. The Supreme Court, however, has "frequently emphasized the nonwaivable nature of an individual employee's right to minimum wage and to overtime pay under the" FLSA. *Barrentine et al., v. Arkansas-Best Freight System, Inc., et al.,* 450 U.S. 728, 739 (1981)(citing *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707 (1945); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 114-16 (1946); *Walling v. Helmerich & Payne, Inc.,* 323 U.S. 37, 42 (1944)). Through the FLSA, Congress afforded substantive protections to individual workers that guarantee that every employee will receive "a fair days pay for a fair days work" and not be subjected to "the evil of overwork as well as underpay." *Id.* (internal quotations and citations omitted). Thus, the Supreme Court has held that "**FLSA rights cannot be abridged by contract** or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (internal quotations and citations omitted)(emphasis added). Therefore, Defendants' contract argument must fail. *See also Nelson,* 896 F. Supp. at 1113 ("While the regulations do allow sleep time to be deducted from compensation pursuant to a written agreement, they specifically so allow **only in the case of the two exceptions . . . .**).

IV. Conclusion

For the reasons discussed above, Plaintiffs' motion for partial summary judgment is GRANTED and Defendants' motion for summary judgment is DENIED. The Court concludes that Plaintiffs are entitled to compensation for their sleep-time periods.

SIGNED August 28, 2008.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE